## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Greenwood Estates Association et al.

v.

King
and Evans

November 23, 1988

By JUDGE WILLIAM H. LEDBETTER, JR.

In this case, a subdivision lot owner sues another lot owner to enjoin him from using his lot for access to a tract outside the subdivision.

Greenwood Estates Section One is a residential subdivision consisting of twenty-seven large lots near Wilderness Run in a rural part of Spotsylvania County. The subdivision was created in 1979 by Sealy-Simms, Inc., a real estate developer. A plat was approved and recorded (Plat Book 13, page 52), restrictive covenants were recorded (Deed Book 488, pages 52-61), and lots were sold. The complainant, Robinson, purchased Lot 6; the respondents, King and Evans, purchased Lot 1. A property owners' association was organized and incorporated in 1982.

The subdivision is not on a public road. Access is by way of a deeded easement across adjoining lands to State Route 640. The only street in the subdivision is a private right-of-way which runs the length of the subdivision and intersects the access road. Lot owners on both sides of the street own to the center of the street. The restrictive covenants provide that the street "is not dedicated to public use, and the general public shall

not have an easement over or on the said street . . . ."
The property owners' association makes assessments and
maintains the street.

King and Evans also own a 500-acre tract, known as
the "Bleak House Tract," which adjoins the subdivision
on the north.

Shortly after they purchased Lot 1, King and Evans
constructed a road across that lot. Since Lot 1 is located
at the intersection of the subdivision street and the
access road, an extension of the access road across the
street and across (front-to-back) Lot 1 provides direct
access between Route 640 and the Bleak House Tract.

Activity on the Bleak House Tract, which involved
vehicular traffic across Lot 1, caused Robinson to call
a meeting of the low owners. After expressing their concern
to King, to no avail, this litigation ensued.

In his bill, Robinson seeks an injunction against
the use of Lot 1 and the easements as an access to and
from the Bleak House Tract.

King and Evans answered. They also filed a cross-bill,
discussed below.

The matter was referred to a commissioner in chancery.
After conducting an evidentiary hearing on May 3, 1988,
the commissioner filed a report favorable to Robinson. King
and Evans filed exceptions. Arguments on the exceptions,
and on Robinson's motion to dismiss the exceptions, were
heard on November 21, 1988.

### Timeliness of the Exceptions

The commissioner's report was filed in the Clerk's
Office on October 13, 1988. King filed exceptions to the
report on November 2, 1988.

Virginia Code § 8.01-615 provides that exceptions
to the report of a commissioner in chancery *shall* be
filed within ten days after the report has been filed.

The history of § 8.01-615 is different from other
statutes and rules of court that impose specific mandatory
time limitations in Virginia procedure. The predecessor
statute provided that a commissioner's report must lay
in the clerk's office ten days *before* a hearing could
be held on exceptions. Be that as it may, the language
of the statute now seems to be mandatory. Nevertheless,

the statute contains a proviso that enables a court to extend the time "for good cause shown." Further, as King and Evans point out, § 8.01-610 makes it clear that equity practice does not allow a court to confirm a commissioner's report simply because exceptions are not filed. Rather, the court must confirm or reject the report in whole or in part "according to the view which it [i.e., the court] entertains of the law and the evidence."

The court is of the opinion that it must conduct an independent review of the case in any event. Having reviewed the pleadings, the commissioner's report, the transcript of the commissioner's hearing, and the various exhibits, and having researched the law applicable to the case, the court deems it unnecessary to rule on Robinson's motion to dismiss the exceptions, for the reasons stated herein.

### Decision

A report of a commissioner in chancery does not have the weight of a jury verdict on conflicting testimony. Section 8.01-610. However, it is entitled to great weight and should not be arbitrarily disturbed. This well-recognized rule applies with particular force to the commissioner's findings of facts upon evidence taken in his presence, but the rule is not applicable to pure conclusions of law contained in the report. *Raiford v. Raiford*, 193 Va. 221 (1952); *Hudson v. Clark*, 200 Va. 325 (1958); *Jamison v. Jamison*, 3 Va. App. 644 (1987).

As noted above, the court has reviewed the pleadings, the evidence and the legal authorities independently, and finds that the commissioner's findings of facts are correct and that his conclusions of law, except as herein modified, are proper.

In the law of easements, it is clear that the owner of an easement is not entitled to use it to benefit any property other than that for which it was originally established, *Clark v. Reynolds*, 125 Va. 626 (1919), especially if the additional use will create a "surcharge" or an added burden upon the servient estate. This principle is applicable to all easements, whether by prescription, implication, express grant, or necessity, since the scope

of the easement, not the manner in which it was created, is the issue. *Robertson v. Robertson*, 214 Va. 76 (1973).

Here, the addition of a 500-acre tract to the use of the access easement, intended to serve the subdivision, obviously would greatly increase the scope of the easement and the burden upon the servient estate.

If Robinson is not the owner of the servient estate, *i.e.*, the land traversed by the access road, how can he be heard to argue that the use of the easement for the Bleak House Tract impermissibly burdens the servient estate? It is conceded that Robinson is not the owner of the land between the subdivision and Route 640 which the access road crosses. However, he is the owner of a lot in the subdivision for which the access road easement was established. As such, he has standing, as a joint user of the easement, to complain about increased burdens upon that easement.

The use of Lot 1 as an access route to the Bleak House Tract also violates the restrictive covenants of Greenwood Estates Section One.

The deed of dedication of Greenwood Estates Section One establishes the subdivision street as a private street, "not dedicated to public use, and the general public shall not have an easement over or on said street . . . ." The property owners' association is charged with the responsibility of levying assessments against lot owners and maintaining the street.

Section A, paragraph 3, provides that all lots "shall be used for residential purposes incidental thereto."

Section A, paragraph 13, declares that "each lot shall constitute the site for one principal residence only" and shall not be subdivided "in any manner."

Section B, paragraph 15, provides: "The streets in Greenwood Estates Section One, and easements for ingress and egress are private and shall be maintained by the owners of the lots located in said subdivision."

The obvious letter and intent of these restrictive covenants is to create and maintain an exclusive residential enclave, sole access to which is a private road and a private subdivision street maintained at the expense of lot owners in the subdivision. To allow one of these lot owners to open these easements to users of five hundred acres behind the subdivision would be violative of the

restrictive covenants and destructive of the secluded and private character of the subdivision.

At the hearing on November 21st, King and Evans suggested that they intend to do nothing more with their Bleak House Tract than build a pond and a single residence. This use, they assert, cannot possibly overburden the subdivision street or the access road. However, the evidence is to the contrary. Considerable vehicular traffic has entered and exited the Bleak House Tract across Lot 1 and the access road in connection with the construction of a dam and pond, and logging activity (which apparently has been limited to cleaning timber for the pond). King has spoken to Robinson and others of a "lake development" on that tract. He has formed a hunt club (the "Gold Mine Hunt Club") consisting of 65 to 70 dues-paying members, who use the Bleak House Tract and, admittedly, use the road across Lot 1 for access. In sum, King is evasive about his plans for the Bleak House Tract, and the lot owners of the subdivision are understandably apprehensive. Neither the court nor the subdivision lot owners are required to monitor the day-to-day activity on the Bleak House Tract *in futuro* to ascertain which, if any, of these various activities or proposed activities come to pass. No matter what King and Evans do on the Bleak House Tract, the use of Lot 1 as a means of access to that tract violates the restrictive covenants of Greenwood Estates Section One.

King and Evans argue that Robinson's complaint is groundless since such an insignificant portion of the subdivision street would be used by vehicular traffic to and from the Bleak House Tract. The precise degree of intrusion or quantum of added burden is immaterial in this case. The lot owners, who maintain the street at their own expense, have the right to prohibit *any* additional continuous use of their private way. Further, the use to which King and Evans are putting and propose to put Lot 1 is in clear contravention of the restrictive covenants. Although restrictive covenants are strictly construed, and doubt or ambiguity is resolved in favor of the free use of land, *Foley v. Harris*, 223 Va. 20 (1982), the pertinent restrictions here are free of ambiguity. Finally, it should be noted that even if the additional traffic would have little practical impact on the subdivision

street, it would travel the entire distance of the access road which is similarly maintained by the subdivision lot owners.

For the reasons explained, the court is of the opinion that the injunctive relief sought by the complainant should be granted, and King and Evans will be enjoined from using Lot 1 or the easements for vehicular travel to and from the Bleak House Tract.

### Decision on the Cross-Claim

In his cross-claim ("cross-bill," Rule 2:13), King asserts that Robinson initiated this action in the name of the property owners' association without authority and that he should be required to refund to the association all association funds expended in pursuit of this litigation. In addition, he asks that Robinson be enjoined from "further wasting the assets" of the association.

The commissioner found that Robinson had authority to act on behalf of and in the name of the association and recommended that the relief sought in the cross-bill be denied.

The association is an active Virginia non-stock corporation. Its articles of incorporation and by-laws are in evidence, as is the deed of dedication which established the purpose and powers of the association. Specifically, the association is empowered "to enforce all provisions of [the] deed of dedication by action at law or in equity." The association is governed by a board of directors, which has "the control and management of the affairs and business" of the organization. Officers include a president, who has "such powers as may be reasonably construed as belonging to the chief executive of any organization."

The evidence shows that the association was chartered in 1982, and an initial board and officers were chosen. Since its inception, as is the case with many such organizations, the association operated rather informally. Robinson, the original president, was not formally re-elected from year to year. The initial board of directors were not formally re-elected by called meetings of the membership from year to year. Apparently, everyone just "understood" that the same directors and the same officers would continue to act by and for the association. In fact, King himself

operated under that assumption; in evidence is a letter which he wrote to Robinson in 1987 referring to him as president, "our representative," of the association.

The association is not defunct. It is in good standing with the State Corporation Commission. It is active; meetings have been conducted, assessments have been levied and collected, and other business, albeit informally, has been conducted.

It is elementary that directors and officers of a corporation continue to serve until they are replaced, resign, or their successors are elected and qualified. Here, then, at the time this action was instituted, Robinson was properly acting as president of the association, and the initial directors were properly serving, with the officers, as the board of directors.

The fact that the membership, *i.e.*, the low owners, were not specifically and formally asked to approve the suit, or that all lot owners were not notified of the meeting at which the subject was discussed, is not dispositive. Clearly, the officers and the board had the power and, in fact, the duty to enforce the restrictive covenants on behalf of the lot owners, and no prior membership approval was necessary.

The court is of the opinion that Robinson acted properly and within his authority in instituting this litigation. Accordingly, Robinson will not be required to reimburse the association's funds which he expended in connection with this case.

After the commissioner filed his report and before the hearing on exceptions, Mr. Goodpasture, counsel for the association and Robinson, filed a motion for leave to withdraw as counsel for the association. At the November 21st hearing, counsel explained that King has acquired several additional lots in the subdivision so that he is now the majority low owner. As such, he or someone on his behalf wrote to Mr. Goodpasture requesting that he resign as counsel for the association and that he cease all action in the name of the association in this case. Without objection, the court granted the motion allowing Mr. Goodpasture to withdraw as counsel for the association and permitted him to pursue the matter on behalf of Robinson in his capacity as lot owner.

As a result of the above development, with which both attorneys concurred, Robinson may not expend association funds for any purpose connected with this litigation subsequent to August 31, 1988, the date of King's letter.

### Conclusion

The report of the commissioner will be confirmed for the reasons explained in this opinion. An injunction will be granted, in the form set forth above, and the cross-bill will be dismissed. The commissioner's fee request is deemed reasonable and will be approved. Costs will be taxed to the respondents.